**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
JIAN HUI LIN a/k/a Danny Lin,
*on behalf of himself and others similarly situated,*

                                     Plaintiff,          **Case No: 17-cv-3435**

                          v.

JOE JAPANESE BUFFET RESTAURANT INC.
        d/b/a Fuji Japanese Cuisine,
FUJI JAPANESE CUISINE INC.
        d/b/a Fuji Japanese Cuisine,
ROKA JAPANESE FOOD INC.
        d/b/a Tomo Japanese Cuisine (Elmhurst),
TOMO JAPANESE CAFÉ, INC.
        d/b/a Tomo Japanese Cuisine (Elmhurst),
CHERRY BLOSSOM BUFFET INC.
        d/b/a Tomo Japanese Cuisine (Jackson Heights),
SUNRISE JAPANESE FOOD INC
        d/b/a Tomo Japanese Cuisine (Jackson Heights),
TOMO JAPANESE CUISINE INC.
        d/b/a Tomo Japanese Cuisine (Jackson Heights),
DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry
        Zhou,
ZHAO LIN CHEN,
"JOHN DOE,"
HUICHA LI,
YOUNG PU LIU,
FENG QING LI,
MEI LIN, and
XIN LI,

                                     Defendants.
-----------------------------------------------------------------x


## 29 U.S.C. § 216(b) COLLECTIVE ACTION & Fed. R. Civ. P. 23 CLASS ACTION

## COMPLAINT


TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

Plaintiff JIAN HUI LIN a/k/a Danny Lin (hereinafter referred to as "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this complaint against Defendants JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry Zhou, ZHAO LIN CHEN, "JOHN DOE," HUICHA LI, YOUNG PU LIU, FENG QING LI, MEI LIN, and XIN LI (hereinafter referred to as "Defendants").

## **INTRODUCTION**

1.      This action is brought by Plaintiff, on behalf of himself as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.* and of the New York Labor Law ("NYLL") and implementing New York Codes, Rules, and Regulations ("NYCRR"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, NYLL, and NYCRR by engaging in a pattern and practice of failing to pay their employees, including Plaintiff, minimum wage for each hour worked, overtime for all hours worked in excess of forty (40) in each workweek, and spread-of-hours for all hours worked in excess of ten (10) in each workday.

3.      Defendants willfully failed to record all of the time that Plaintiff and similarly situated employees work or worked, including time worked in excess of forty (40) hours per week and ten (10) hours per day.

4.      Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid wages, including unpaid minimum wages, (2) unpaid overtime, (3) liquidated damages; (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

5.      Plaintiff further alleges pursuant to the NYLL § 650 *et seq.* and 12 NYCRR § 146 that he is entitled to recover from the Defendants: (1) unpaid wages, including unpaid minimum wages, (2) unpaid overtime, (3) unpaid spread-of-hours; (4) liquidated damages equal to one hundred percent (100%) of the sum of unpaid wages, unpaid overtime, and unpaid spread-of-hours under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day (7) nine percent (9%) simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") NYCPLR § 5004, (8) post-judgment interest, and (9) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)

and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**PLAINTIFF**

8.  Plaintiff JIAN HUI LIN a/k/a Danny Lin is a resident of Queens County, New York and was employed by Defendants JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, located at 113-27 Queens Boulevard, Forest Hills, NY 11375, as a sushi chef.

**DEFENDANTS**

*Corporate Defendants*

9.  Defendant JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine is a domestic business corporation organized under the laws of the State of New York with a principal address at 113-27 Queens Boulevard, Forest Hills, NY 11375.

10.  From on or about December 22, 2014 to the present time, JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine operated and continues to operate a Japanese restaurant located at 113-27 Queens Boulevard, Forest Hills, NY 11375.

11.  Upon information and belief, JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

12.  Upon information and belief JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine purchased and handled goods moved in interstate commerce.

13.  Defendant FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine was a domestic business corporation organized under the laws of the State of New York with a principal address at 113-27 Queens Boulevard, Forest Hills, NY 11375.

14.     From on or about November 23, 2009 to February 2, 2017, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine operated a Japanese restaurant located at 113-27 Queens Boulevard, Forest Hills, NY 11375.

15.     Upon information and belief, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine was a business engaged in interstate commerce that had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

16.     Upon information and belief FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine purchased and handled goods moved in interstate commerce.

17.     Defendant ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst) is a domestic business corporation organized under the laws of the State of New York with a principal address at 89-14 Queens Boulevard, Elmhurst, NY 11373.

18.     From on or about November 8, 2011 to the present time, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst) operated and continues to operate a Japanese restaurant located at 89-14 Queens Boulevard, Elmhurst, NY 11373.

19.     Upon information and belief, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst) is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

20.     Upon information and belief ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst) purchased and handled goods moved in interstate commerce.

21.     Defendant TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) was a domestic business corporation organized under the laws of the State of New York with a principal address at 89-14 Queens Boulevard, Elmhurst, NY 11373.

22.     From on or about July 18, 2013 to May 11, 2006, TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) operated a Japanese restaurant located at 89-14 Queens Boulevard, Elmhurst, NY 11373.

23.     Upon information and belief, TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

24.     Upon information and belief TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) purchased and handled goods moved in interstate commerce.

25.     Defendant CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) is a domestic business corporation organized under the laws of the State of New York with a principal address at 86-12A 37th Avenue, Jackson Heights, NY 11372.

26.     From on or about June 8, 2015 to the present time, CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) operated and continues to operate a Japanese restaurant located at 86-12A 37th Avenue, Jackson Heights, NY 11372.

27.     Upon information and belief, CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

28.     Upon information and belief CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) purchased and handled goods moved in interstate commerce.

29.     Defendant SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights) was a domestic business corporation organized under the laws of the State of New York with a principal address at 86-12A 37th Avenue, Jackson Heights, NY 11372.

30.     From on or about July 15, 2011 to November 2, 2015, SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights) operated a Japanese restaurant located at 86-12A 37th Avenue, Jackson Heights, NY 11372.

31.     Upon information and belief, SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights) was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

32.     Upon information and belief SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights) purchased and handled goods moved in interstate commerce.

33.     Defendant TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) was a domestic business corporation organized under the laws of the State of New York with a principal address at 86-12A 37th Avenue, Jackson Heights, NY 11372.

34.     From on or about July 9, 2007 to October 2, 2013, TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) operated a Japanese restaurant located at 86-12A 37th Avenue, Jackson Heights, NY 11372.

35.     Upon information and belief, TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

36.     Upon information and belief TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) purchased and handled goods moved in interstate commerce.

***Individual Defendants***

37.     The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendants and being among the ten largest corporate shareholders are individually responsible for unpaid wages under the New York Business Corporation Law ("NYBSC") § 630(a).

38.     DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry Zhou, known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

39.     Upon information and belief, DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry Zhou is an owner and officer of JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), the New York Division of Alcoholic Beverage Control Principal for JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), and SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and the holder of a Qualifying Certificate in Food Protection for JOE

JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, and FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine.

40.     DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry Zhou acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

41.     ZHAO LIN CHEN, known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

42.     Upon information and belief, ZHAO LIN CHEN is an owner and officer of JOE

JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), and the holder of a Qualifying Certificate in Food Protection for JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine and FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine.

43.     ZHAO LIN CHEN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

44.     "JOHN DOE," known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE

FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

45.     Upon information and belief, "JOHN DOE" is an owner and officer of JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

46.     Upon personal knowledge of Plaintiff, "JOHN DOE" spends most of his time at the Elmhurst and Jackson Heights locations.

47.     "JOHN DOE" acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

48. HUICHA LI (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

49. Upon information and belief, HUICHA LI is an owner and officer of JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

50. HUICHA LI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson

Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights),

and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

51.     YOUNG PU LIU (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules and conditions of employment, (3) determined employee

rates and methods of payment, and (4) maintained employee records at JOE JAPANESE

BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC.

d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst),

CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

52.     Upon information and belief, YOUNG PU LIU is an owner and officer of JOE

JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE

CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo

Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson

Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights),

and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

53.     YOUNG PU LIU acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well

as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with

JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE

CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo

Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson

Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights),

and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

54.     FENG QING LI (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules and conditions of employment, (3) determined employee

rates and methods of payment, and (4) maintained employee records at JOE JAPANESE

BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC.

d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst),

CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

55.     Upon information and belief, FENG QING LI is an owner and officer of JOE

JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE

CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo

Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson

Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights),

and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), and

the Chief Executive Officer of ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine

(Elmhurst).

56.     FENG QING LI acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

57.     MEI LIN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

58.     Upon information and belief, MEI LIN is an owner and officer of JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), and was the Chief Executive Officer of SUNRISE JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

59.     MEI LIN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

60.     XIN LI (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

61.     Upon information and belief, XIN LI is an owner and officer of JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC.

d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst),

CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), and was the person

to whom the New York Department of State would serve process on behalf of TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst).

62.     XIN LI acted intentionally and maliciously and is an employer pursuant to FLSA, 29

U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §

2, and regulations promulgated thereunder, and is jointly and severally liable with JOE

JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE

CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo

Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine

(Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson

Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights),

and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights).

## STATEMENT OF FACTS

## CORPORATE DEFENDANTS CONSTITUTE AN ENTERPRISE

63.     JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI

JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a

Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese

Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine

(Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson

Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson

Heights) operate a chain of Japanese restaurants doing business variously as "Tomo Japanese Cuisine" and "Fuji Japanese Cuisine."

64. At all relevant times herein, JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) were, and continue to be, a single and joint employer with a high degree of interrelated and unified operation, and share common management, centralized control of labor relations, common ownership, common control, common business purposes and interrelated business goals.

65. JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) together constitute an enterprise engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

66. JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese

Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) purchase and handle goods moved in interstate commerce.

67.    JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) operate three (3) active Japanese restaurants:

a.    Fuji Japanese Cuisine, 113-27 Queens Boulevard, Forest Hills, NY 11375;

b.    Tomo Japanese Cuisine (Elmhurst), 89-14 Queens Boulevard, Elmhurst, NY 11373; and

c.    Tomo Japanese Cuisine (Jackson Heights), 82-12A 37th Avenue, Jackson Heights, NY 11372.

68.    Upon information and belief, Fuji Japanese Cuisine, Tomo Japanese Cuisine (Elmhurst), and Tomo Japanese Cuisine (Jackson Heights) share managers, including Individual Defendants DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry Zhou and "JOHN DOE."

69.    Tomo Japanese Cuisine (Elmhurst), and Tomo Japanese Cuisine (Jackson Heights) maintain a common website: https://tomoqueens.com. The homepage of this website contains the addresses, telephone numbers, fax numbers, and business hours of Tomo Japanese Cuisine (Elmhurst), and Tomo Japanese Cuisine (Jackson Heights), as well as what purport to be links to

more complete websites for the individual restaurants.

70.     The link to Tomo Japanese Cuisine (Elmhurst) leads to a functional website,

https://tomoqueens.com/tomoelm.php. The link to Tomo Japanese Cuisine (Jackson Heights)

leads to an unowned domain, http://ww1.tomonyc.com/tomojh.php.

71.     Fuji Japanese Cuisine maintains a website that is nearly identical in design to the website

for Tomo Japanese Cuisine (Elmhurst): http://fujijc.com/index.php.

72.     http://fujijc.com/index.php and https://tomoqueens.com/tomoelm.php were both designed

by Blue Sky Creative Studio in 2014, and sport nearly identical logos: the name of the restaurant

("Fuji" and "Tomo" respectively) superimposed over a stylized calligraphy brushstroke, with

Chinese characters meaning "fish" offset above and to the right of the restaurant name.

73.     https://tomoqueens.com/about.php identifies Fuji Japanese Cuisine as its "sibling

restaurant."

74.     http://fujijc.com/about.php identifies Tomo Japanese Cuisine (Elmhurst) and Tomo

Japanese Cuisine (Jackson Heights) as its "sibling restaurants."

75.     https://tomoqueens.com/tomoelm.php and http://fujijc.com/about.php advertise nearly

identical dishes, using the same names and pictures to describe them.

**CORPORATE DEFENDANTS ARE SUCCESSOR EMPLOYERS; ALTERNATIVELY,
CORPORATE DEFENDANTS ARE JOINT EMPLOYERS**

76.     JOE JAPANESE BUFFET RESTAURANT INC. and FUJI JAPANESE CUISINE INC.

did and continue to do business under the name "Fuji Japanese Cuisine."

77.     JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI

JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine did and continue to do business at the

same location, 113-27 Queens Boulevard, Forest Hills, NY 11375.

78.     JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI

JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine were and continue to be engaged in the preparation, sale, and delivery of Japanese food.

79. JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine had and continue to have substantially the same menu.

80. JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine were and continue to be owned and managed by substantially the same individuals: DIAN CAI ZHOU a/k/a Dian Chi Zhou a/k/a Larry Zhou, ZHAO LIN CHEN, "JOHN DOE," HUICHA LI, and YOUNG PU LIU.

81. JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine served and continue to serve substantially the same body of customers in and around the neighborhood of Forest Hills, in Queens.

82. JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine used and continue to use substantially the same employees and equipment to carry out their business.

83. For the foregoing reasons, Corporate Defendants JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine are considered the same employer under the New York Anti-Shirt Changer Law, NYLL § 219.4.

84. ROKA JAPANESE FOOD INC. and TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) did and continue to do business under the name "Tomo Japanese Cuisine (Elmhurst)."

85.     ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) did and continue to do

business at the same location, 89-14 Queens Boulevard, Elmhurst, NY 11373.

86.     ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) were and continue to be

engaged in the preparation, sale, and delivery of Japanese food.

87.     ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) had and continue to have

substantially the same menu.

88.     ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) were and continue to be

owned and managed by substantially the same individuals: DIAN CAI ZHOU a/k/a Dian Chi

Zhou a/k/a Larry Zhou, ZHAO LIN CHEN, "JOHN DOE," FENG QING LI, and XIN LI.

89.     ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) served and continue to serve

substantially the same body of customers in and around the neighborhood of Elmhurst, in

Queens.

90.     ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO

JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst) used and continue to use

substantially the same employees and equipment to carry out their business.

91.     For the foregoing reasons, Corporate Defendants ROKA JAPANESE FOOD INC. d/b/a

Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese

Cuisine (Elmhurst) are considered the same employer under the New York Anti-Shirt Changer

Law, NYLL § 219.4.

92.     CHERRY BLOSSOM BUFFET INC., SUNRISE JAPANESE FOOD INC, and TOMO

JAPANESE CUISINE INC. did and continue to do business under the name "Tomo Japanese

Cuisine (Jackson Heights)."

93.     CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) did and continue to

do business at the same location, 82-12A 37th Avenue, Jackson Heights, NY 11372.

94.     CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) were and continue

to be engaged in the preparation, sale, and delivery of Japanese food.

95.     CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) had and continue to

have substantially the same menu.

96.     CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) were and continue

to be owned and managed by substantially the same individuals: DIAN CAI ZHOU a/k/a Dian

Chi Zhou a/k/a Larry Zhou, ZHAO LIN CHEN, "JOHN DOE," and MEI LIN.

97.     CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights),

SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO

JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) served and continue to serve substantially the same body of customers in and around the neighborhood of Jackson Heights, in Queens.

98. CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) used and continue to use substantially the same employees and equipment to carry out their business.

99. For the foregoing reasons, Corporate Defendants CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) are considered the same employer under the New York Anti-Shirt Changer Law, NYLL § 219.4.

100. In the alternative, Corporate Defendants JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) are and were joint employers.

101. From on or about July 18, 2003 to the present, Corporate Defendants JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine, FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine, ROKA JAPANESE FOOD INC. d/b/a Tomo Japanese Cuisine (Elmhurst), TOMO JAPANESE CAFÉ, INC. d/b/a Tomo Japanese Cuisine (Elmhurst), CHERRY

BLOSSOM BUFFET INC. d/b/a Tomo Japanese Cuisine (Jackson Heights), SUNRISE JAPANESE FOOD INC d/b/a Tomo Japanese Cuisine (Jackson Heights), and TOMO JAPANESE CUISINE INC. d/b/a Tomo Japanese Cuisine (Jackson Heights) operated the same restaurants, employing the same employees in the same positions and performing the same tasks that were integral to the business, exclusively for the business, at the same time, were owned by the same individual owners, and were managed by the same individual managers.

**DEFENDANTS COMMITTED THE FOLLOWING ALLEGED ACTS KNOWINGLY, INTENTIONALLY, AND WILLFULLY AGAINST THE PLAINTIFF, THE FLSA COLLECTIVE, AND THE CLASS**

102. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees at least the New York minimum wage for each hour worked.

103. While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

104. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

105. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

106. At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiff's hours worked and wages paid.

107. Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

108. At all relevant times, Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

109. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

110. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with statements every payday in their primary languages that accurately listed all of the following: the dates of work covered by that payment of wages; the employee's name; the name of the employer; the address and phone number of the employer; the employee's rate or rates of pay and basis thereof; the employee's gross wages; the employee's deductions; allowances, if any, claimed as part of the minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

111. Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

112. Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

113. At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

**PLAINTIFF JIAN HUI LIN a/k/a Danny Lin**

114. From on or about April 20, 2014 to May 14, 2017, Plaintiff JIAN HUI LIN a/k/a Danny Lin was employed by Individual Defendants to work as a sushi chef for JOE JAPANESE BUFFET RESTAURANT INC. d/b/a Fuji Japanese Cuisine and FUJI JAPANESE CUISINE INC. d/b/a Fuji Japanese Cuisine.

115. At the time he was hired, Plaintiff JIAN HUI LIN a/k/a Danny Lin was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

116. From on or about April 20, 2014 to May 14, 2017, Plaintiff JIAN HUI LIN a/k/a Danny Lin's regular work schedule ran:

    a. From 11:30 to 23:00 for eleven and one half (11.5) hours a day, minus one (1) hour-long break that did not take place at a fixed time during the day, for three (3) days a week—Tuesdays through Thursdays—for a total of thirty-one and one half (31.5) hours per week;

    b. From 11:30 to 24:00 for twelve and one half (12.5) hours a day, minus one (1) hour-long break that did not take place at a fixed time during the day, for two (2) days a

week—Fridays and Saturdays—for a total of twenty-three (23) hours per week; and

c.        12:30 to 23:00 for ten and one half (10.5) hours a day, minus one (1) hour-long

break that did not take place at a fixed time during the day, for one (1) day a week—

Sundays—for a total of nine and one half (9.5) hours per week.

117.    In addition to his regular work schedule, Plaintiff JIAN HUI LIN a/k/a Danny Lin was

required to stay an additional twenty (20) minutes after each workday.

118.    One (1) or two (2) days each week, Plaintiff JIAN HUI LIN a/k/a Danny Lin would be

required to continue working through his regularly-scheduled hour-long break.

119.    In total, from on or about April 20, 2014 to May 14, 2017, Plaintiff JIAN HUI LIN a/k/a

Danny Lin worked approximately sixty-seven and one half (67.5) hours per week.

120.    From on or about April 20, 2014 to December 5, 2014, Plaintiff JIAN HUI LIN a/k/a

Danny Lin was paid at a rate of seven hundred dollars ($700.00) per month, regardless of how

many hours he actually worked.

121.    From on or about December 6, 2014 to July 21, 2015, Plaintiff JIAN HUI LIN a/k/a

Danny Lin was paid at a rate of seven hundred twenty-five dollars ($725.00) per month,

regardless of how many hours he actually worked.

122.    From on or about July 22, 2015 to January 22, 2016, Plaintiff JIAN HUI LIN a/k/a

Danny Lin was paid at a rate of seven hundred fifty dollars ($750.00) per month, regardless of

how many hours he actually worked.

123.    From on or about January 23, 2016 to July 23, 2016, Plaintiff JIAN HUI LIN a/k/a

Danny Lin was paid at a rate of seven hundred seventy-five dollars ($775.00) per month,

regardless of how many hours he actually worked.

124.    From on or about July 24, 2016 to May 14, 2017, Plaintiff JIAN HUI LIN a/k/a Danny

Lin was paid at a rate of eight hundred dollars ($800.00) per month, regardless of how many hours he actually worked.

125.    Throughout his employment, Plaintiff JIAN HUI LIN a/k/a Danny Lin was paid a portion of his monthly salary every week, in cash.

126.    Plaintiff JIAN HUI LIN a/k/a Danny Lin took two fifteen-minute meal breaks during the day: lunch at 14:30 every day, and dinner at 21:00 on weekdays and 21:30 on weekends.

127.    Throughout his employment, Defendants failed to provide Plaintiff JIAN HUI LIN a/k/a Danny Lin with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages; his name; the name of the employer; the address and phone number of the employer; his rate or rates of pay and basis thereof; his gross wages; his deductions; allowances, if any, claimed as part of the minimum wage; net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay; his number of regular hours worked, and his number of overtime hours worked.

128.    At no time during Plaintiff JIAN HUI LIN a/k/a Danny Lin's employment did Defendants inform him that they were taking a tip credit towards the minimum wage.

129.    Plaintiff JIAN HUI LIN a/k/a Danny Lin was not paid overtime for hours worked above forty (40) in any given workweek.

130.    Plaintiff JIAN HUI LIN a/k/a Danny Lin was not paid spread of hours for workdays that began and ended ten (10) hours apart.

131.    While employed by Defendants, Plaintiff JIAN HUI LIN a/k/a Danny Lin was not exempt under federal and state laws requiring employers to pay employees overtime.

## COLLECTIVE ACTION ALLEGATIONS

132.    Plaintiff bring this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants for up to the last three

(3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime for all hours worked in excess of forty (40) per week (the "Collective Action Members.")

## CLASS ACTION ALLEGATIONS

133. Plaintiff brings his NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

134. All said persons, including Plaintiff, are referred to herein as the "Class."

135. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

136. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the Class.

*Commonality*

137. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiff and the Class members within the meaning of the NYLL;

b.      Whether Plaintiff and the Class members were entitled to and paid minimum wage under the NYLL;

c.      Whether Plaintiff and the Class members were entitled to and paid overtime under the NYLL;

d.      Whether Plaintiff and the Class members were entitled to and paid spread-of-hours pay under the NYLL and NYCRR;

e.      Whether Defendants maintained a policy, pattern, and/or practice of failing to provide statutory meal periods;

f.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff's and the Class members' employment, or timely thereafter;

g.      Whether Defendants provided paystubs detailing the rates of pay and credits taken toward the minimum wage to Plaintiff and the Class members each payday; and

h.      At what common rate, or rates subject to a common method of calculation were and are Defendants required to pay the Class members for their work.

***Typicality***

138.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate policies of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants

benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

139.	Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiff in both class action and wage-and-hour employment litigation cases.

*Superiority*

140.	A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications

with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common class-wide relief. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

141.     Defendants and other employers throughout the state of New York violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Nonpayment of Minimum Wage
Brought on behalf of the Plaintiff and the FLSA Collective]**

142.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

143.     At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the similarly-situated Collective Action Members, for some or all of the hours they worked.

144.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional amount as liquidated damages.

145.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by failing to compensate Plaintiff and the Collective Action Members at the statutory minimum wage when they knew or should have known that such was due and that failing to do so would financially injure Plaintiff and the Collective Action Members.

## COUNT II.
### [Violations of the New York Labor Law—Nonpayment of Minimum Wage
### Brought on behalf of the Plaintiff and the Rule 23 Class]

146.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

147.    At all relevant times, Plaintiff was employed by Defendants within the meaning of NYLL NYLL §§ 2 and 651.

148.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and the Class for some or all of the hours they worked.

149.    Defendants knowingly and willfully violated Plaintiff's and similarly-situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

150.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Nonpayment of Overtime
### Brought on behalf of the Plaintiff and the FLSA Collective]

151.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

152.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for such employment at a rate not less than one and one-half times (1.5x) the

regular rate at which he is employed, or one and one-half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

153.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

154.    Defendants' failure to pay Plaintiff and the FLSA Collective overtime violated the FLSA.

155.    At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime at the statutory rate to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) per workweek, which violated and continues to violate the FLSA, 29 U.S.C §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

156.    The FLSA and supporting regulations require employers to notify employees of the requirements of the employment law. 29 C.F.R. § 516.4.

157.    Defendants willfully failed to notify Plaintiff and the FLSA Collective of the requirements of their employment laws in order to facilitate their exploitation of Plaintiff's and the FLSA Collective Members' labor.

158.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known that failing to do so would financially injure Plaintiff and the Collective.

## COUNT IV.
### [Violations of the New York Labor Law—Nonpayment of Overtime Brought on behalf of the Plaintiff and the Rule 23 Class]

159.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

160.     After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N.

8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any

underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus

interest.

161.     At all relevant times, Defendants had a policy and practice of refusing to pay overtime at

one and one-half times (1.5x) Plaintiff's and the Class Members' regular hourly rate or the

minimum wage, whichever is greater.

162.     Defendants' failure to pay overtime violated the NYLL.

163.     Defendants' failure to pay overtime was not in good faith.

## COUNT V.
**[Violation of New York Labor Law—Failure to Pay Spread of Hours**
**Brought on behalf of Plaintiff and Rule 23 Class]**

164.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

165.     The NYLL requires employers to pay an extra hour's pay for every day that an employee

works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and

12 NYCRR § 146-1.6.

166.     Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
**[Violation of New York Labor Law—Failure to Provide Meal Periods**
**Brought on behalf of Plaintiff and Rule 23 Class]**

167.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

168.     The NYLL requires that employees provide: a noon day meal period of at least thirty (30)

minutes for employees who work a shift of more than six hours extending over the noon day

meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at

least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

169.     Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiffs and the Rule 23 class work or worked.

170.     Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

171.     Defendants' failure to provide the meal periods required by NYLL §162 was not in good faith.

### COUNT VII.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

172.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

173.     Defendants did not maintain, establish and preserve Plaintiff's weekly payroll records for a period of not less than six years, as required by 12 NYCRR § 146-2.1.

174.     As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

175.     Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

176.     Defendants' failure to maintain adequate and accurate written records of actual hours

worked and true wages earned by Plaintiffs were not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiff and Rule 23 Class]

177.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

178.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

179.     Defendants intentionally failed to provide notice to employees in violation of NYLL § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

180.     Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

181.     Due to Defendants' violations of New York Labor Law, each Plaintiffs is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. NYLL § 198(1-b).

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Pay Stub
### Brought on behalf of Plaintiff and Rule 23 Class]

182.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

183.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

184.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff's payday.

185.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiffs together with costs and attorneys' fees pursuant to New York Labor Law. NYLL §198(1-d).

## COUNT X.
### [Violations of the Internal Revenue Code—Fraudulent Filing of IRS Returns
### Brought on behalf of the Plaintiff]

186.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

187.    26 USC § 7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

188.    Due to Defendants' violations of 26 USC § 7434, Plaintiff is entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's

discretion, reasonable attorneys' fees.

## COUNT XI.
### [Violations of the New York General Business Law—Deceptive Acts and Practices Brought on behalf of the Plaintiff]

189.    Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

190.    NY General Business Law § 349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

191.    Due to Defendants' violations of NYGBS § 349, Plaintiff is entitled to recover from Defendants, jointly and severally, his actual damages or fifty dollars ($50), whichever is greater, or both such actions.

192.    Plaintiff demands the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporations to recover wages owed as employees of the corporations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a.      Certification of this case as a collective action pursuant to FLSA;

b.      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action members;

c.      A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

d.      An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

e.      An award of compensatory damages equal to the unpaid minimum wage, overtime, and spread of hours due to Plaintiff and the Collective under FLSA, and to Plaintiff and the Class under the NYLL, plus punitive and/or liquidated damages equal to compensatory damages under the New York Wage Theft Prevention Act for Defendants' willful failure to pay minimum wage, overtime, and spread of hours;

f.      Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire notice detailing rates of pay and payday;

g.      Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that list employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

h.      Reimbursement of reasonable out-of-pocket costs sustained by Plaintiff and similarly situated delivery couriers in the purchase, maintenance, and repair of their delivery vehicles in direct service of Defendants;

i.      An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

j.      The costs and disbursements of this action;

k.      An award of prejudgment and post-judgment interest;

l.      Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety (90) days after expiration of the time to appeal with no appeal then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL § 198(4).

m.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: June 7, 2017
      Flushing, NY

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*


 /s/ John Troy
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel (718) 762-1324
johntroy@troypllc.com