UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JIAN HUI LIN, *et al.*,

Plaintiffs,

v.

JOE JAPANESE BUFFET RESTAURANT INC., *et al.*,

Defendants.

**DECISION & ORDER**
17-CV-3435 (WFK)(CLP)

**WILLIAM F. KUNTZ, II, United States District Judge:** On June 7, 2017, Danny Lin filed a collective and class action against Defendants. ECF Nos. 1, 2. The Court later certified this case an FLSA class action. ECF No. 41-3. Alin Chen, Maggie Chen, and Joyce Chen all consented to become parties in the collective action. ECF Nos. 55, 56, 58. This Court conducted a bench trial in accordance with 28 U.S.C. § 1330(a) from Monday, July 19, 2021 and until Wednesday, July 21, 2021. Having reviewed the testimony and exhibits, as well as the parties' post-trial submissions, this Court issues the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

### I. The Corporate Defendants

Fuji Japanese Cuisine ("Fuji") is a restaurant located at 133-27 Queens Boulevard, Forest Hills, NY 11375. Originally, Fuji was operated by Fuji Japanese Inc. and owned by Dian Cai Zhou. Exhibit Day 2 Transcript 20210720, ECF No. 88-3 ("Day 2 Tr.") 173:24-175:8. Dian Cai Zhou is the cousin of Dian Chi Zhou ("Larry Zhou"). *Id.* On or around December 22, 2014, Fuji's ownership was transferred from Fuji to Joe Japanese Restaurant Inc., which was owned by Zhao Lin Chen. Day 2 Tr. 197:17-21. Even after the transfer, Joe Japanese maintained the same doing business as name, the same trade dress, and the same logo. Exhibit Day 1 Transcript 20210719, ECF No. 88-2 ("Day 1 Tr.") 80:12-25.

Tomo Japanese Café ("Tomo Cafe") is located at 89-14 Queens Boulevard, Elmhurst, NY. It was operated by Tomo Japanese Café Inc., which was owned by Larry Zhou. Day 2 Tr. 176:6-19, 196:6-196:1. In around 2011, Tomo was transferred to Roka Japanese Food Inc., which was owned by Mei Lin, Larry's wife. Day 2 Tr. 200:18-201:2; Exhibit Day 3 Transcript 20210721, ECF No. 88-4 ("Day 3 Tr.") 218:17-19.

Tomo Japanese Cuisine ("Tomo Cuisne") is located at 86-12A 37th Avenue, Jackson Heights, NY 11372. *See* ECF Nos. 88-10, 88-12. Tomo Cuisine was originally operated by Tomo Japanese Cuisine Inc., which was owned by Larry Zhou. Day 2 Tr. 176:20-24, 195:3-5. In 2013, Tomo Cuisine was transferred to Sunrise Japanese Food for no consideration. Day 2 Tr. 195:15-23. In 2015, Tomo Cuisine was again transferred, this time to Cherry Blossom Buffet, Inc.

## II. The Individual Defendants

### a. Dian Chi Zhou a/k/a Larry Zhou

Larry Zhou was involved with Fuji, Tomo Café, and Tomo Cuisine. Larry held the liquor license for all three restaurants. *See* ECF No. 88-11, 88-12, and 88-13. He delegated his responsibilities as Fuji's liquor license holder to Zhao Lin Chen, Day 2 Tr. 207:11-208:5, and his responsibilities as the liquor license holder at Tomo Cuisine and Tomo Café to his wife and to a manager. Day 2 Tr. 209:24-210:7.

While never the formal owner of Fuji, Larry was involved in its daily management. When Fuji was owned by his cousin, Dian Cai Zhou, Larry would assist with "restaurant facing matters," such as the preparation and presentation of Japanese Cuisine. Day 2 Tr. 175:12-24.

Additionally, it was Larry that informed Zhao Lin Chen that Dian Cai Zhou was hoping to sell Fuji. Day 2 Tr. 194:11-16. After Zhao Lin Chen took formal control of Fuji, Larry would give Zhao Lin Chen advice as to how to operate the busines, Day 3 Tr. 220:1–9, and many of the same employees continued working at Fuji after the transfer., Day 3 Tr. 263:5-12. Zhao Lin Chen would hold out Larry Zhou as the boss, Day 1 Tr. 94:1-4; Day 3 Tr. 285:15-17, and he was known to the employees as the "big boss" of Fuji, Day 1 Tr. 62:16-25, 93:15-19, Day 2 Tr. 122:23-123:4, 149:2-9.

Larry Zhou would come to Fuji for Chinese New Year celebrations, which Fuji hosted for the employees of Fuji as well as the employees from Tomo Café and Tomo Cuisine. Day 1 Tr. 63:1-7, 80:10-11, 82:14-84:3, 93:15-25, 104:16-105:9; Day 2 Tr. 141:14-19. When Larry Zhou came to Fuji, he would give Zhao Lin Chen instructions to pass on to the servers including: to prepare salad, tofu, and soy sauce; to clean tables, floors, and bathrooms; to answer customer phone orders and pack orders; and not to play the lottery or play with their phones during work hours. Day 1 Tr. 63:14-64:10, 94:14-25. He would give the sushi chefs instructions directly, such as not to display the tip basket at the sushi bar, as well as directions on how to kill and clean fish and cook sushi rice. Day 2 Tr. 141:22. Zhao Lin Chen would refer to Larry Zhou's instructions when speaking with Fuji employees more than once a week. Day 1 Tr. 84:4-11.

Even after he transferred ownership of Tomo Cuisine to Sunrise Japanese Cuisine, Inc., Larry Zhou continued to work there on an as-needed basis, buying inventory or making sushi, for no compensation. Day 2 Tr. 210:8-11. His contributions were necessary for his wife to continue operating Tomo Cuisine, and Mei Lin sold Tomo Cusine in part because he was out of the

Country for long stretches of time and was therefore unable to contribute to operating the restaurant. Day 2 Tr. 212:7-021.

b. Zhao Lin Chen

Zhao Lin Chen is the formal owner and business manager of Fuji. He determined employees' schedules and salaries, and paid employees' salaries, at Fuji. Day 1 Tr. 19:9-21:22., 59:2-3, 88:23-90:4, 93:6-14; Day 2 Tr. 131:15-132:6, 147:7-148:21. He kept records of employee pay and intermittently had Fuji employees sign pay receipts. Day 3 Tr. 274:20-275:10. Zhao Lin Chen rented his living space from Mei Lin and Larry Zhou, on the second floor of the triplex they owned, and of which Larry and Mei occupied the first floor. Day 3 Tr. 2221:1-10.

c. Mei Lin

Mei Lin is Larry Zhou's wife. Day 1 Tr. 95:17-19, Day 2 Tr. 140:15-18. Mei Lin represented Fuji to New York Department of Health Inspectors. Day 1 Tr. 65:3-10. At the Fuji Chinese New Years' gatherings, she would hand out red envelopes containing $100.00 new year bonuses to employees of Fuji, Tomo Café, and Tomo Cuisine. Day 1 Tr. 95. 21-96:6; Day 2 Tr. 141:6-13.

d. Remaining Defendants

Huicha Li, Young Pu Liu, Feng Qing Li, Xin Li, and "John Doe" did not answer the complaint, defend this action, or appear for trial. Plaintiff never moved for Default Judgment and a certificate of default was never entered on the record. Accordingly, no facts have been demonstrated about these remaining Defendants.

**III. Plaintiffs**

**a.** Jian Hui Lin a/k/a Danny Lin

Jian Hui Lin a/k/a Danny Lin worked at Fuji Japanese Cuisine as a sushi chef from April 20, 2014 through May 14, 2017. Day 2 Tr. 122:7–17. He learned about the job availability at Fuji Japanese Cuisine from a friend who had worked at Tomo Japanese Café. Day 2 Tr. 122:18–125:3. After Jian Hui Lin's referral, he went to Fuji Japanese Cuisine, and while he was not interviewed, another sushi chef told him that his schedule would follow the operating hours on the menu, and that he would work six days per week with Mondays off. Day 2 Tr. 125:8–126:16. He was not given a wage notice. Day 2 Tr. 131:24–132:1. Nor was he told that his weekly salary would correspond to an hourly wage for a certain number of hours. Day 2 Tr. 132:10–12, 151:14–152:8.

Jian Hui Lin regularly worked from 11:30 AM to 11:00 PM Tuesdays through Thursdays, from 11:30 AM to 12:00 PM on Fridays and Saturdays, and from 12:00 PM to 11:00 PM on Sundays. Day 2 Tr. 126:15–20. This remained his schedule throughout his employment. Day 2 Tr. 129:9–10. He was supposed to get a 1-hour break during the working day, but he was on call during his break, which was subject to interruption by Zhao Lin Chen. Day 2 Tr. 128:4–18; Day 3 Tr. 276:8–11. He only had about 5 to 10 minutes to eat lunch and dinner. Day 2 Tr. 128:19–129:5. Jian Hui Lin's working time was not recorded. Day 2 Tr. 129:6–8.

Jian Hui Lin was told his starting salary would be $700.00 per week. Day 2 Tr. 129:11–23. His salary rose to $750.00 per week the week of December 28, 2014. Day 2 Tr. 129:24–19. It remained at that level through January 31, 2015, except for the week of January 24, 2015, when his pay was docked to $625.00. His regular salary then dropped to $725.00 per week,

where it remained through July 5, 2015. *See* ECF No. 88-3. It rose back up to $750.00 again on July 6, 2015, where it remained through February 28, 2016. *See id.*; *see also* ECF No. 88-4. On February 29, 2016, it rose to $775.00, where it remained through March 26, 2017, except for the weeks October 30 and November 27, 2016, where it was docked to $646.00; the week ending December 18, 2016 where it was docked to $582.00; the week ending January 1, 2017 where it was docked to $388.00; and the weeks ending February 19 and 26, 2017 where it was docked to $675.00. *See id.*; *see also* ECF No. 88-5. On March 27, 2017, it rose to $800.00, where it remained through May 7, 2017. *Id.* For the week of May 8, 2017, he was paid a double salary of $1,600.00. *Id.*

Jian Hui Lin would learn about changes to his salary from Zhao Lin Chen. Day 2 Tr. 131:15–23. He was paid in cash by Zhao Lin Chen. Day 2 Tr. 132:2–6. He did not receive wage statements with his pay, even though he had to sign Zhao Lin Chen's pay ledger. Day 2 Tr. 132:23–136:8. He was not told that his weekly salaries would include pay for overtime or pay at one and one-half times his regular rate of pay for overtime hours. Day 2 Tr. 143:13–16.

**b.** Jia Chen a/k/a Maggie Chen

Jia Chen worked at Fuji Japanese Cuisine as a waitress from on or about December 28, 2014 through about March 2018, with times off to go to China between March 21 and July 31, 2016, between October 31 and December 11, 2016, and between February 27 and March 26, 2017. Day 1 Tr. 88:3–9, 90:19–25, 91:9–13. She was interviewed and hired by Zhao Lin Chen. Day 1 Tr. 87:6–88:11. During the interview Zhao Lin Chen told Jia Chen that her working hours would coincide with Fuji Japanese Cuisine's operating hours, on Wednesdays through Sundays.

Day 1 Tr. 88:23–89:15. He told her that she would get a 1-hour break during the working day, but as it transpired that break would be interrupted or would not happen when the restaurant was busy. Day 1 Tr. 89:16–24, 98:4–13; Day 3 Tr. 276:8–11. He told her that her wage rate would be $30.00 per day, amounting to $150.00 per week. Day 1 Tr. 89:25–90:4. He did not give her a written wage notice or a tip credit notice. Day 1 Tr. 90:5–10.

Jia Chen worked from 11:30 AM to 11:00 PM on Wednesdays and Thursdays, from 11:30 AM to 12:00 AM on Fridays and Saturdays, and from 12:30 PM to 11:00 PM on Sundays throughout her employment. Day 1 Tr. 90:11–18, 91:1–4. On a typical day, she spent between 30 and 60 minutes performing non-tipped side work. Day 1 Tr. 95:4–15, 105:10–107:10. Her working time was not recorded. Day 1 Tr. 98:14–16.

She was paid $150.00 per week throughout her employment, with the exceptions that her pay for the weeks ending January 24 and October 4, 2015 was docked to $120.00 for missing a day of work, and her pay was augmented to $180.00 the week ending August 28, 2016 for taking an extra day of work. Day 1 Tr. 91:22–24. She was never informed that her pay rate would include pay for overtime hours, or for overtime hours at a rate of one and one-half times her regular rate. Day 1 Tr. 98:17–22. Zhao Lin Chen paid Jia Chen, in cash, and neither presented her a wage receipt to sign nor furnished her a wage statement. Day 1 Tr. 93:6–14, 96:9–13.

**c. Yajian Chen a/k/a Alin Chen**

Yajian Chen worked at Fuji Japanese Cuisine from about January 2012 through about December 2013, and again from February 1, 2016 to April 2, 2018. Day 1 Tr. 46:18–47:2, 53:4–7, 58:5–8. At her initial interview in about January 2012, Yajian Chen was told that her schedule

would be 11:30 AM to 11:00 PM Mondays through Thursdays, and 2:30 PM to 9:30 PM on Fridays and Saturdays. Day 1 Tr. 48:25–49:4. And at her initial interview, Yajian Chen was told that she would be paid $150.00 per week. Day 1 Tr. 50:23–51:1. She was not furnished with a written wage notice. Day 1 Tr. 67:13–15. Nor was she told that her pay would cover a particular number of hours per week, or that there would be a tip or meal credit taken. Day 1 Tr. 85:6–17.

However, throughout her first term of employment, Yajian Chen worked from 11:00 AM to 11:00 PM Mondays through Thursdays and 2:00 PM to 9:30 PM on Fridays and Saturdays, an additional half-hour each day amounting to an additional three hours per week on top of what she had been told at her interview that her schedule would be. Day 1 Tr. 49:49:5–8, 51:4–6. She spent that additional time, as well as another half-hour during the working day for a total of one hour per day, doing non-tipped side work. Day 1 Tr. 49:20–50:20. For this, she was paid $150.00 per week throughout her first term of employment. Day 1 Tr. 50:23–51:3. 51:7–9.

Yajian Chen was rehired in February 2016 by Zhao Lin Chen. Day 1 Tr. 51:16–23. On her first day back, she learned her schedule would be from 11:30 AM to 11:00 PM Mondays, Wednesdays, and Thursdays; and 4:00 PM to 12:00 AM on Fridays and Saturdays. Day 1 Tr. 53:20–54:6. This remained her schedule through the rest of her employment. Day 1 Tr. 57:14–58:4. Yajian Chen was supposed to have a single 1-hour break during the working day, but she remained on call to work during this break, and Zhao Lin Chen would frequently interrupt it. Day 1 Tr. 61:11–22; Day 3 Tr. 276:8–11.

Yajian Chen also learned on her first day back that her wage rate would remain the $150.00 per week it was during her first period of employment. Day 1 Tr. 54:7–14. She did not

receive a written wage notice stating as much. Day 1 Tr. 67:13–17. Her wage would stay at $150.00 per week through August 28, 2016. On August 29, 2016, her Yajian Chen's wage rose to $200.00 per week, where it would remain for the rest of her employment, excepting a dock in pay to $160.00 the week ending November 27, 2016. Day 1 Tr. 58:9–17. Yajian Chen received no notice of this change, written or otherwise, until she received $200.00 in her pay packet. Day 1 Tr. 58:18–59:1. She received her pay packets in cash from Zhao Lin Chen. Day 1 Tr. 59:2–3.

Again, Yajian Chen was not told that her pay would cover a particular number of hours per week, or that there would be a tip or meal credit taken. Day 1 Tr. 85:6–17. There were tip and meal credit line items on her pay receipts, but she was instructed not to read them or to pay them any mind, was not given enough time to read them, and was not furnished with copies to keep. Day 1 Tr. 84:20–85:4.

In or about May 2017, Zhao Lin Chen began requiring employees to sign pay receipts. Day 3 Tr. 275:5–10. She could read some of the English text in the middle column below the table of time entries (relating to cash and tips), but she could not read the rest of the English text and did not understand the numbers or what they referred to. Day 1 Tr. 60:13–61:10. Yajian Chen did not get a copy of the receipt to keep—nor did she receive a wage statement of any kind at any point during her employment. Day 1 Tr. 59:8–11. The receipts did not accurately represent Yajian Chen's days worked per week, hours worked per day, or amount paid, but she signed because Zhao Lin Chen told her to—that it was a new regulation and not to look at any of the information on the paper. Day 1 Tr. 61:25–62:12, 84:20–85:5.

**d.** <u>Ying Chen a/k/a Joyce Chen</u>

Ying Chen worked at Fuji Japanese Cuisine from July 25, 2016 through July 12, 2018, with time off from January 1, 2018 through February 28, 2018. She was hired by Zhao Lin Chen to work as a waitress. Day 1 Tr. 18:17–19:12. Her first day at work was an audition day, Zhao Lin Chen could evaluate her potential performance as a waitress. Day 1 Tr. 19:9–19. On that day, she was told her schedule and starting salary, which were, respectively: Mondays and Tuesdays 11:30 AM to 11:00 PM, Fridays and Saturdays 11:30 AM to 12:00 AM, and Sundays 12:00 AM to 11:00 PM; and $120.00 per week. Day 1 Tr. 19:18–21:22. She was not given a written wage notice, written tip credit notice, or any other onboarding document at her time of hire. Day 1 Tr. 22:5–9.

Ying Chen's schedule remained the same throughout both periods of her employment. Day 1. Tr. 21:14–18. Ying Chen did not record her working time or her break time on a time clock, a sign-in sheet, or otherwise; her schedule followed the business hours of the restaurant. Day 1 Tr. 20:13–24.

After she was hired, Ying Chen learned that she was supposed to get a 1-hour break during the working day, and that she was not relieved from work, but was on call to work during this 1-hour break. Day 1 Tr. 20:25–21:1127:21–28:1; Day 3 Tr. 276:8–11. Zhao Lin Chen would be the one to call her away from her breaks. Day 1 Tr. 21:12–13. Typically, Ying Chen would spend between 2 and 3 hours performing non-tipped side work. Day 1 Tr. 45:13–15.

Ying Chen was paid $150.00 per week throughout her employment. Zhao Lin Chen paid Ying Chen, in cash, and did not give her a wage statement along with her pay. Day 1 Tr. 22:10–20. In or about May 2017, Zhao Lin Chen began requiring employees to sign pay receipts; Ying

Chen would sign regardless of what it said because if she didn't, she wouldn't receive her pay or would be fired, and did not receive a copy to keep. Day 1 Tr. 22:21–22, 27:11–18, 35:11–23, 44:13–18; Day 3 Tr. 275:5–10. She could read the numbers on these receipts, but could not understand their significance, and could not read the English text. Day 1 Tr. 35:24–36:5, 45:16–21.

## CONCLUSIONS OF LAW

Plaintiffs bring claims for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.* and of the New York Labor Law ("NYLL") and implementing New York Codes, Rules, and Regulations ("NYCRR"), arising from Defendants' alleged failure to pay Plaintiffs minimum wage, overtime and spread-of-hours and failure to provide adequate wage notices and statements. Defendants set forth two main defenses: (1) only Fuji qualifies as Plaintiffs' employer and thus all other Defendants cannot be held liable under the relevant statutes; and (2) Fuji did not commit the alleged violations.

### I. Identifying "Employers" Under the FLSA and NYLL

The parties have stipulated to the fact that Fuji was Plaintiffs' employer. ECF No. 72. Therefore, the parties' dispute is whether the remaining Defendants qualify as employers under the FLSA and the NYLL.

#### a. Legal Standard

The FLSA defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). There is "no rigid rule for the identification of an FLSA employer." *Barfield v. N.Y.C. Health &*

*Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008). Instead, the Second Circuit has outlined two separate tests for determining whether an employer-employee relationship exists under the FLSA.

*i. The Formal Control Test*

The first is known as the "formal control" test and involves a multi-factor analysis that asks, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (the "*Carter* factors"); *Teri v. Spinelli*, 980 F.Supp.2d 366, 374 (E.D.N.Y. 2013) (Chen, J.) (describing the *Carter* factors as the "formal control" test). Not all factors must be present to establish an employer-employee relationship, and the Court should be guided by whether "economic reality" depicts an employer-employee relationship. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 36 (E.D.N.Y. 2015) (Mauskopf, J.) ("Plaintiffs' allegations that both Individual Defendants had the power to hire and fire the employees, to determine rates of pay and work schedules and to supervise and control the employees' work establish three of the *Carter* factors and depict an "economic reality" in which the Individual Defendants were Plaintiffs' joint employers along with Las Delicias."); *see Teri*, 980 F. Supp. 2d at 376 ("[T]he Court concludes that no reasonable jury considering the 'economic realities' of the [parties'] relationship could find that [the individual defendant] was not [the p]laintiffs' joint employer under the FLSA and NYLL.").

*ii. The Functional Control Test*

Alternatively, the Second Circuit has found that a person or entity lacking formal control might nonetheless exercise "functional control" as an employer under the FLSA. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003) ("*Zheng* factors"). In evaluating these factors, a Court can examine: "(1) whether [the alleged employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported employer]." *Id.* at 72. The Court is "also free to consider any other factors it deems relevant to its assessment of the economic realities." *Id.* at 71–72

**b.** Fuji and Zhao Lin Chen are Plaintiffs' Employers

The record shows that each of the Plaintiffs worked at Fuji under the supervision of Zhao Lin Chen. Zhao Lin Chen exercised all the characteristics of an employer identified by the *Carter* factors: the power to hire and fire employees, the power to determine employee schedules and salaries, and the responsibility for keeping records on behalf of Fuji. Additionally, Zhao Lin Chen conducted these functions while managing Joe Japanese Buffet Restaurant Inc, i.e. Fuji. Accordingly, from on or about December 2014, Zhao Lin Chen and Fuji were all Plaintiffs' "employers" under the FLSA.

**c.** Larry Zhou is Plaintiffs' Employers

A review of the *Zheng* factors and the *Carter* factors depicts an economic reality establishing Larry Zhou as Plaintiffs "employer" under the FLSA. The record establishes that Larry Zhou was effectively Zhao Lin Chen's supervisor: Larry was held out as the "big boss" of the establishment and would give directives to Zhao Lin Chen that were implemented in the day-to-day management of the business. These instructions covered all aspects of the business, including the preparation of sushi, the quality of customer service, employee conduct on work breaks, and the restaurant's tip collection. And as discussed above, Zhao Lin Chen determined the rate and method of pay, determine employment records, and had the power to hire and fire employees. Accordingly, the Court finds that Larry Zhou functioned as Plaintiffs' employer under the FLSA.

**d.** <u>The Record Does Not Support a Finding that Mei Lin was Plaintiffs' Employers, Nor that any of the Other Corporate Entities Employed Plaintiffs</u>

Plaintiffs claim that Mei Lin and the remaining corporate entities are also liable, either directly as Plaintiffs' employer or otherwise under theories of successor liability or by virtue of functioning as a joint integrated enterprise. The Court finds that the record fails to support these conclusions of law. To start, Mei Lin had limited involvement in the business apart from representing the restaurant at state health inspections and giving employees gifts during the Chinese New Year. Additionally, while the various corporate entities had similar websites and menus, this is insufficient to establish joint liability. Plaintiffs claim that Fuji, Tomo Café, and Tomo Cuisine shared ingredients and workers but this assertion is unsubstantiated. Accordingly, this Court declines to conclude that Mei Lin or any of the other corporate entities at issue were

Plaintiffs' employers.

## II. Plaintiff's FLSA Claims

### a. Legal Standard for FLSA Wage Claims

"To establish liability on a claim for underpayment of wages, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 472 (S.D.N.Y. 2015) (Torres, J.) (quoting *Kuebel*, 643 F.3d at 361); *see Tapia v. Blch 3rd Ave. LLC*, 14-CV-8529, 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016) (Nathan, J.) (noting that under the FLSA and the NYLL, "[p]laintiffs bear the burden of proof to establish all claims and damages by a preponderance of the evidence").

Under the FLSA, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only . . . submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" *Gonzalez v. Masters Health Food Serv. Inc.*, 14-CV-7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (Caproni, J.) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)). An employee discharges his burden at this first step "if he . . . can prove that [he] 'in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Hernandez v. Jrpac Inc.*, 14-CV-4176, 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (Engelmayer, J.) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, (1946)). "This burden is 'not high' and may be met 'through

estimates based on [the employee's] own recollection.'" *Id.* (quoting *Kuebel*, 643 F.3d at 362).

If an employee makes this showing, "[t]he burden then shifts to the employer to come forward [i] with evidence of the precise amount of work performed or [ii] with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Jrpac*, 2016 WL 3248493, at *27 (quoting *Anderson*, 328 U.S. at 687–88). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Kuebel*, 643 F. 3d at 362).

b. Jia Chen, Yajian Chen, and Ying Chen were Paid Below the Minimum Wage

Defendants did not keep complete records, so the Court relies on Plaintiffs' recollections at trial, the exhibits introduced at trial, and Plaintiff's pre-trial submissions. By these calculations, Jia Chen, Yajian Chen, and Ying Chen were paid salaries between $3.75 per hour and $4.00 per hour. *See* ECF No. 88 at 31–32. Additionally, Defendants fail to submit evidence that rebuts these calculations or that show they followed the procedures to allow Plaintiffs to count tips toward their salary. Accordingly, the Court concludes that Jia Chen, Yajian Chen, and Ying Chen were paid below the federal minimum wage at all relevant times.

c. Plaintiffs are Entitled to Unpaid Overtime

Again, Defendants did not keep complete records, so the Court relies on Plaintiffs' recollections at trial, the exhibits introduced at trial, and Plaintiff's pre-trial submissions. Here, the employers did not pay Plaintiffs for any rest or meal breaks. Often, the employers would interrupt Plaintiff during these breaks, cutting them short well before the required breaks were

over. Additionally, all Plaintiffs regularly worked beyond 40 hours per week. For example, Danny Lin worked 67.5 hours per week regularly and Maggie Chen worked 53.5 hours per week regularly. *See* ECF No. 82-1. Both Joyce Chen and Alin Chen also frequently surpassed 40 hours per week. *Id.* No Plaintiffs were appropriately compensated for this work beyond 40 hours per week. As with Plaintiffs' minimum wage claims, Defendants have failed to put forward precise evidence rebutting these showings. Accordingly, the Court hereby concludes that all Plaintiffs are entitled to unpaid overtime compensation

**III. Plaintiff's State Law Claims**

a. Defendants are Liable for Unpaid Minimum Wage and Overtime under the NYLL

Plaintiffs also bring wage and overtime claims under the NYLL. "A similar standard applies to unpaid compensation claims under [the] NYLL." *Gonzalez*, 2017 WL 3835960, at *16; *see Garcia v. JonJon Deli Grocery Corp.*, 13-CV-8835, 2015 WL 4940107, at *4 & n.8 (S.D.N.Y. Aug. 11, 2015) (Torres, J.). But under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof. "NYLL § 196–a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Canelas v. World Pizza, Inc.*, 14-CV-7748, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (Ramos, J.) (quoting NYLL § 196–a(a)). "If an employer cannot satisfy its burden under the FLSA, it cannot satisfy th[is] 'more demanding burden' of the NYLL." *Canelas*, 2017 WL 1233998, at *9 (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005) (Sand, J.)). Because Plaintiffs have

met their burden under the FLSA, the Court reaches the same conclusion as to Defendants' wage and hour violations with respect to the NYLL. Defendants failed to pay Jia Chen, Yajian Chen, and Ying Chen the minimum wage and failed to pay all Plaintiffs overtime wages.

b. Defendants are Liable for Unfurnished Wage Notices

NYLL provides that an employer must provide within ten business days of an employee's first day of employment a notice containing important information about both the business and the employee's terms of employment. N.Y. Lab. L. §§ 195.1(a), 198(1-b). No Plaintiff was provided with any such notice. Accordingly, Defendants are liable for Unfurnished Wage Notices under the NYLL, which provides a penalty of $50.00 per workday that the violations occurred, not to exceed a total of $5,000.00. *Id.*

c. Defendants are Liable for Unfurnished Wage Statements

NYLL further requires that an employee be provided with a statement with every payment of wages that lists, among other things, the dates of work, the name of the employee and the employer, the rate or rates of pay, and any wage deductions. N.Y. Lab. L. §§ 195.3, 198(1-d). Employees that do not receive wage statements can recover $250.00 for each workday, not to exceed a total of $5,000.00. *Id.* No Plaintiffs were provided with wage statements and according their employers are liable under the NYLL.

**IV. Liquidated Damages & Damages Calculation**

Plaintiffs here make a claim for liquidated damages. NYLL and FLSA's provisions for liquidated damages are interpreted similarly in this Circuit, though the ultimate damage calculation may differ. *See, e.g.*, *Tapia v. Blch 3rd Ave. LLC*, 906 F.3d 58, 60 (2d Cir. 2018)

("Absent a showing of good faith, the FLSA provides for liquidated damages equal to unpaid wages and overtime recovered. The NYLL also provides for liquidated damages *on the same terms*, though its damages calculation is different."). The burden necessary to avoid liquidated damages is a difficult one; "double damages are the norm and single damages the exception." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). Plaintiffs are entitled to liquidated damages if they have been denied overtime "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. § 198(1-a). "To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Barfield*, 537 F.3d at 150 (internal quotation marks omitted). Here Defendants have failed to take reasonable measures to comply with wage and hour laws, apart from conferring with their accountants and obtaining wage posters. Zhao Lin Chen and Larry Zhou displayed awareness of the FLSA and NYLL requirements yet failed to comply with the dictates of these laws. Accordingly, Defendants are liable for liquidated damages.

Finding the previously identified employers liable under both the FLSA and the NYLL, the Court hereby ADOPTS Plaintiff's pretrial damages calculation. *See* ECF No. 82-1. This calculation shows the following: (1) Jian Hui Lin a/k/a Danny Lin is entitled to $344,558.68 in total damages; (2) Jia Chen a/k/a Maggie Chen is entitled to $81,457.00 in total damages; (3) Ya Jian Chen a/k/a Alin Chen is entitled to $108,736.85 in damages; and (4) Ying Chen a/k/a Joyce Chen is entitled to $164,525.51 in damages. *Id.* If, as indicated, Plaintiffs decide to move for attorneys' fees in this case, that motion should be addressed to Chief Magistrate Cheryl L.

Pollak.

## CONCLUSIONS

For the reasons stated above, judgment is entered against Defendants Fuji Japanese Cuisine, Inc., Joe Japanese Buffett Restaurant Inc., Larry Zhou, and Zhao Lin Chen and in favor of Plaintiffs with respect to all FLSA and NYLL claims. All other parties are hereby DISMISSED and the case is closed.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
U.S. DISTRICT JUDGE

Dated: December 7, 2021
Brooklyn, NY